May it please the Court, Robert Bacon for the appellant, David Carpenter. Civil Rule 17c in the court in Rohan, lay out procedures for competency evaluation in order to protect potentially incompetent litigants. Civil Rule 35 limits the use of involuntary mental examinations in civil litigation. We're dealing here with an order that in its breadth is inconsistent with those principles. No, we're not challenging. I mean, obviously, one of the questions is whether or not we have jurisdiction over this interlocutory appeal. Assuming we have jurisdiction over the interlocutory appeal, I don't understand you to be challenging the order for the examination. Correct? That is correct, Your Honor. So if we get to the merits, the merits are the scope of the protective order. That is correct. Would you prefer that I speak a moment to appealability at this point, or do I have a question? Let me start with that just as a sort of a logical premise. All right. You're going to have to show us we've got jurisdiction here. Yes. And I would begin doing that by suggesting the similarities of this order to the orders in Biddeker and Osband, in which jurisdiction was found, suggests there's a couple of ways that this order is even a better candidate for immediate appealability than was the order in Biddeker. We are here seeing Counsel, let me just interrupt. Isn't Biddeker clearly distinguishable from this case? Here, there is no attempt by the government to want to reveal what goes on in the examination in any other proceeding except the habeas proceeding. In Biddeker, there was a danger that it would be revealed across the board. Why doesn't that distinguish Biddeker? For the purposes that we're dealing with here, I think that that is a distinction without a difference. Biddeker was dealing with the attorney-client privilege involving the client's former attorneys. Here, a couple of things. We're dealing with the significant privacy interests involved in involuntary mental examination. Also, the logic of the district court's order would extend to a petitioner who invoked the right to seek examination under Rohan. And as I've suggested principally on page 24 of the reply brief, that the district court's logic would deter exercise of the Rohan right in that sense certainly has the potential to infringe upon the ability of the client to form a relationship with his current attorney, just as the Biddeker order implicated the relationship with the prior counsel. So there are distinctions, there are differences from Biddeker, but they don't compel a conclusion that the present order is not appealable. Let me just, you know, one of the factors under Cohen is whether or not when we get to the end, cases on appeal after a judgment has been entered, why can't any error here? What is it you're afraid of that couldn't be corrected on a direct appeal from the final judgment? This is not as Respondent would characterize it, a ruling on the admission of evidence. It's an order that fits perhaps even more so than Biddeker itself did, the language of the Biddeker court of significant strategic decisions turning on its validity. This large case involving a client getting along in years, a do-over after reversal is simply not realistic, the possibility of yes. What strategic questions do turn on this? Mannert, Respondent has promised in essence or threatened, depending on which word you care to use, to infuse his entire expert preparation for the litigation of the merits of the case, beginning with the report that was supposedly adopted for competency purposes only. I thought that in the petition he does raise a challenge to his competency at this time. Doesn't he do that? In the petition that – and this may be a good segue into talking about the merits of the case, so it's relevant on the present issue also. So maybe talk about the merits because that may help us understand what strategic choices might be at issue. All right. In answer to Judge Paya's question, the court has made clear more recently than the filing of these petitions in Rohan that questions of current competency are not a claim for relief. There's probably a number of pre-Rohan petitions out there like these that contain language that is now surplusage. The court has taught us in Rohan that this is not an issue that is presented unless and until a motion has been made. So insofar as – insofar as – You alleged in this petition, unless I'm reading it wrong, that his current competency is in question, that he's suffering from current – multiple – he's suffering multiple mental impairments. And I think – What is the district court judge to do? I mean, she looked at this and she thought, well – or I don't forget how the whole thing came about, but she orders his competency – I don't either. She orders his competency evaluation. Yes. All right. Now, in the end, you don't really challenge that on this appeal. That's not a question we're going to get here today. Okay. So you're concerned about what's going to – how that's going to be used. And I still haven't heard you answer Judge Fletcher's question about how this report is going to affect your strategic decisions or is somehow going to affect the hearing on the petition in the district court, that if the district court errs, couldn't be corrected on appeal, or how it affects your strategic decisions. I don't understand yet. Try to – try to explain the best I can that the issue will – that the mental health claims will turn on extensive – extensive expert evaluation. I agree. Quite – quite complex issues. The civil rules do lay out the parameters for the evaluation of such claims. They do not – they do not provide – when the competency of a litigant is called into question, be he a habeas petitioner or anyone else, that the adverse party gets a leg up and is to initiate that process through – by making use of – Maybe we can get at it this way. Assume that we did not have any competency evaluation ordered by the district court. We simply have nothing in the record now. So we just go straight to the merits of the habeas petition. Yes. Which include various claims of incompetency at the time of trial. Yes, they do. So what's going to happen if that's the only thing in front of us? We don't have a question as to competency now, which has triggered this sui sponte order. What's going to happen with respect to investigation of the competency claim at the time of trial? How are we going to find that out in the district court? We will look at the history of the evaluations. I assume we're going to get an expert witness. I assume we're going to get one or more expert witnesses now investigating and interrogating – sort of – Yes. What's the right word? Questioning him now to the extent that they can figure out what his mental state was the next day. So we're going to have people looking at him right now, correct? We are. And I presume we are to the extent that the good cause under Civil Rule 35 is appropriately established. And I want to say a word or two about that. Well, before you get to that, what I want to know is, assuming that we're having experts evaluating his competency, even without the sua sponte order for evaluation of competency, and I understand that the sua sponte order investigates his competency now. Yes. And you're alleging incompetency earlier. Yes. But what harm to you do you get, or to your client, results from an evaluation of his competency now? Because we're going to investigate his competency to some extent, and that investigation and evaluation will, of course, include – well, I'm sure the report's going to say, well, the guy is perfectly competent now, but I think he was incompetent before, or he's perfectly incompetent now with what's obviously a persistent condition. I mean, the report that we would get that's directed only to the conclusion as to whether he was competent at trial, that report, I'm quite confident, will have some reference to his current mental state as it's sort of working backward to figure out what he was before. So I'm trying to figure out, in a sense, what's the harm of having this report in the record as we try to figure out what his competency was earlier. There's a colloquial phrase that you ask a different question and you get a different answer, and it goes a bit beyond that, that you ask a different question, you go about looking for the answer in a different way. This is the root of decisions of this and other courts, finding trial defense counsel ineffective for doing precisely what Attorney General is proposing to do here with Dr. Resch, which is then take an evaluation directed to the question of current competency and projecting it onto other issues which would be evaluated in a different way. Were the evaluator directed to those particular questions as the evaluator was not in this case? But I assume that if the current report directed at current competency to follow through with the habeas petition is allowed and is allowed to be considered along with the habeas petition, I mean, that's the part you're challenging, that there is also going to be an investigation by a competent professional  I mean, this report that went out, that's simply not going to be the only report. My goodness. I'm sure Your Honor is accurate about that. I also take Mr. Builder back at his word that he's not going to pretend that Dr. Resch's report is not there, that he is going to pick up where Dr. Resch left off, making observations unnecessary to the direct current competency inquiry that he was ordered to provide. Now I want to come back to the question that's been worrying me with respect to the interlocutory appeal. Because I think I have a fairly good sense as to what's going to happen if we have Dr. Resch's report on the record and the state is allowed to look at it, along with whatever other report that we get or reports that are directed specifically to his competency at the earlier time. What strategic choices are dictated by your not knowing the answer now  I don't know if dictated is the right word, but the Respondent's presentation is certainly going to play out based upon not only what Dr. Resch said about current competency, but what he reached out to say about other issues. I've indicated that the reasoning of the district court has broader applications to litigants who might voluntarily invoke the Rohan process. I'm running out of time, so I hope you'll give me a few moments for rebuttal. I'm trying to short circuit this. One of the questions that occurs to me, and I wonder if the state would agree to it, because it might make some of these problems go away. If the state would agree to say to the trial judge, we'll keep Dr. Resch's report away from the other doctors who are asked to evaluate his prior competency. I can look at it, the district court can look at it, but the doctors who are trying to figure out what his earlier competency was, they do it independently, they don't read Dr. Resch's report as they try to do that. I wonder if the state would be willing to do that, and would you be then content if the state were willing? That certainly is, I certainly would be very happy to accept that. That certainly addresses the largest part of the concern that provoked our request for this protective order. That's absolutely right. Okay. Why don't we hear from the state, and we'll give you a chance to respond. Thank you. Good morning, Your Honor. Good afternoon, Your Honor. Deputy Attorney General Bill Bilderbach on behalf of the Warden of San Quentin State Prison. To address very directly some of the points made by the Court here today, I think that you're precisely correct, Your Honor, when you say isn't the question of his competency at the time of trial going to be closely informed by the question of his competency today. That's precisely correct. Indeed, the Diagnostic and Statistical Manual instructs us that, actually, retrospective diagnoses are disfavored, and the only realistic way to do that is to take an instant diagnosis, that is a contemporaneous diagnosis, and then try to account for the presence or absence of intervening vectors that might have influenced the present mental state, and then we can maybe make a reasonable inference about the mental state at some point in time in the past. But you have to start a priori with the determination of what his instant mental state is, that is his mental state today, in order to examine intelligently his mental state. I have to say it's not my normal role to act as a settlement judge, particularly on appeal, but let me ask you the question I just asked. Certainly. Would you be content to say, listen, we're not going to fight about whether or not Dr. Risch's report is going to be used by the other doctors. We want his report in the record. We want it to be available so I can use it to argue maybe to the district judge. But the doctors who are being asked to evaluate his earlier competency, why in the world do they need to see Dr. Risch's report? That is to say they're supposed to make up their own mind. Well, I would point out that any competent psychiatrist, if they were here today, would tell you that an indispensable component of any full-fledged, broad-spectrum psychological evaluation includes a deep and as thoroughgoing review of any prior mental evaluations of the defendant as are available. So, for example, in this particular case, we know that Mr. Carpenter had previously been committed to a mental institution, and I feel reasonably confident when I say that Petitioner's Counsel are probably going to refer to that prior mental evaluation. I understand all of that. Exactly. All of the prior history, all of the prior evaluations, the earlier points in time those seem to be entirely relevant to what any doctor today will have to look at as trying to figure out what his earlier competence was. Right. But Dr. Risch is not in any position superior to another doctor investigating Mr. Carpenter right now to try and determine what his earlier competence was. So what's the value of bringing in Dr. Risch's evaluation when he has no superior information than the information that the doctor would get today who's doing his independent investigation, who's trying to figure out what his earlier competence was? Again, it would just be the advantage of having more information on these essential issues. Not to make too fine a point of it, but there was an extensive interview with Mr. Carpenter that informed Dr. Risch's report. Subsequent doctors were not present during that interview. They don't know what transpired. They would not know what transpired. That information is useful in order to make it accurate. So in other words, you really do want any later doctors to look at this interview and look at the evaluation and look at the report that Dr. Risch has prepared. And the raw data. Absolutely, Your Honor. I want any doctor that I retain to be ---- I abandon any attempt to act as settlement judge. Very well, Your Honor. And I want to point out also that one of the potential ills that Petitioner's Counsel identified would be that Respondent would somehow draw inappropriate inferences about other questions from Dr. Risch's report. But, of course, as we're discussing here, Dr. Risch's report is just one piece of evidence, one fact or collation of facts that would be required. I should know this, but I don't. Who chose Dr. Risch? It was mutually agreed upon by the parties. The entire procedure was we had proposed a psychological expert of our own, and we had suggested Dr. Risch as the court's expert. Petitioner's Counsel took a look at Dr. Risch, were suitably impressed with his credentials and background, and suggested to us that we simply abandon having three different psychologists examined, Mr. Carpenter, and instead we just settled on one mutually agreed upon expert that was the expert for the court and for both parties. I see. And assuming that we did not have this report from Dr. Risch, assuming that the only thing in front of the court is going to be some investigation report directed solely at the question of earlier competency, what would be the procedure for choosing that doctor or those doctors?  Yes. The only thing in front of the court is going to be a psychological, a psychiatric, you know, psychiatric evaluation. So it would not be typically the case that you would have a court order. You have to be on the same person. Yeah. That's exactly correct, Your Honor. The other point I wanted to make was that they did not simply, as Judge Pai is averted, allege that he's incompetent right now. They did do that. They did do that. But it wasn't that they just said that. What they said was that his confinement and his sentence are illegal, unconstitutional, and void. That is, his trial is void because he's incompetent right now. That's Claim 64 in the 98-2444 petition. And while I think I probably have reasonable arguments both on the facts and the law that that claim ultimately fails, the question of whether a protective order should issue that would preclude me from meeting the claim that his trial was void because he's incompetent today, that I should not be able to refer to Dr. Rush's report, seems to me to be nonsense. So unless the Court has additional questions. Well, actually, I do. How would you distinguish? Because we may or may not be right under Cohen in interlocutory orders. But we're pretty generous in granting interlocutory appeals. Bitteker's one, for which I plead innocent. Osborne is another, guilty. Griffin is another, guilty. Tell me why this case does not come within, in your view, Bitteker, Osborne, and Griffin. Well, I'll start with Bitteker because it sort of set the stage. And it's the unbonding. It was. And I would point out, too, that even in the Bitteker decision itself, Chief Judge Kaczynski noted that the question of appealability was closer. In that case, the parties had agreed that it was appealable as a collateral order. Oh, yeah. Parties agree on all kinds of stuff sometimes. The key differences here are the lack of any – and this is – and I share the Court's troubling conflation of the questions of the merits and the appealability issue, but the key distinction here is that there is no possibility that this evidence isn't going to be in front of the trier of fact in this case at the end of the day. And so that means that issuing the protective order, or if this Court were, I guess, to reverse the district court's refusal to expand the protective order, will have no consequence to the resolution of this action. The same evidence is going to end up being in front of the judge, albeit from a different expert, but the same essential evidence. Well, it may not be the same evidence. It's going to be evidence going to the same question. It's going to – well, and one would hope – and as a matter of fact, the point that the Court's making is well taken, which is part of the problem with the position with the protective order is if they get an expert who now says he's incompetent today, I would be precluded from going, well, that just seems wrong to me because I have Dr. Rush's report. And they go, well, no, you can't talk about Dr. Rush's report. Well, I assume you have your own expert, Dr. Smith. Well, and I would hope to think that we would all get similar results, but it just – it does seem to me to be nonsensical to say we're going to preclude you from adverting to a piece of evidence that speaks to a material issue that's repeatedly referred to in the petition because of the procedural circumstances in which the question was first addressed. The question – the procedural circumstances in which the question was first addressed really are a matter of – should be, I would think, a matter of indifference. The question is whether this evidence is relevant, probative, and admissible. And if it is, then that's what we should be relying on. Thank you.   Thank you, Your Honor.  Okay. One last shot at it. All right. Let's start with two minutes and see what happens. Excuse me. I'll tell you what. Two minutes. Competency and the merits of mental health issues are always going to reflect overlapping symptoms. That's going to be true in a trial case or a habeas case or any other kind of case. I suggested about pages 20 to 24 of the reply brief quoted from some of the textbooks on forensic psychiatry and the like concerning, nevertheless, the dangers of conflating the two in evaluation. We're not saying that Dr. Resch's report cannot be used to litigate the question of current competency, and if Mr. Bilderbach suggested otherwise, that's certainly not so. The language in the petition about current incompetency being a reason to set aside judgments and so on, the court in Rohan has told us that it is not that. And the disturbing conclusion that comes from Bilderbach's argument is that pretty much any time a litigant's competency is called into question, which not only Rohan, Rule 17c speaks of, protection of the litigant, that that fortuity results in the ability to make use of that evidence for whatever purpose it may be relevant on the merits of the case. I don't think it's realistic to imagine an order like this being entered with respect to a civil litigant other than a habeas petitioner. So that and in the cases beyond this one, it does put a price on the Rohan right of running this risk of extraordinary discovery. Thank you very much. Thank you very much. The case of Carpenter v. Ayers is now submitted for decision and we're adjourned. Thank you very much. And thank you for your patience waiting until the end. All rise.
judges: Nelson D. W., Fletcher W. , Paez